112 P.3d 812

**Jane ROE, John Roe and Jane Doe, Plaintiffs–Appellants,**

**v.**

**ALBERTSON'S, INC., Tim Repp, individually and in his capacity as a manager of Albertson's Inc., and John Does I through X are entities or individuals who were the ·agents, employees, independent contractors, subdivisions, franchisees, wholly owned subsidiaries, or divisions of the Defendants herein, Defendants–Respondents.**

No. 29596.

Supreme Court of Idaho, Boise, January 2005 Term.

May 4, 2005.

Jane Roe, Meridian, argued pro se for appellant.

Wood, Crapo LLC, Salt Lake City, for respondent. Kathryn O. Balmforth argued for respondent.

BURDICK, Justice.

This case arises from the sexual relationship between Tim Repp (Repp), an Albertson's supervisor, and Jane Doe (Doe), a minor and also an Albertson's employee. Doe and her parents sued Albertson's alleging various tort claims for failing to protect Doe from Repp's sexual advances. On motion for summary judgment the district court found in Albertson's favor, holding Doe's and her parents' claims barred by the exclusive remedy provisions of the Idaho Worker's Compensation Act. Doe and her parents (collectively referred to as Appellants) appealed. We reverse and remand the matter for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Both Doe and Repp began working for Albertson's Store No. 161 in July 1999. Doe, a minor, worked as a courtesy clerk (grocery bagger). Repp, who was 38 years old, was employed as an assistant front end manager. Front end managers supervise courtesy clerks.

Beginning in September 1999, Repp started to show favoritism to Doe. He would invite Doe into areas prohibited to courtesy clerks, walk Doe to her car, allow Doe extended breaks, and allow her to act as a cashier, although company policy required that cashiers be 18 years old. In November 1999, Repp made sexual advances to Doe. During November the two kissed, fondled each other, and engaged in oral sex while on duty at Albertson's. The two attempted to have sexual intercourse while at the store, but, because it was too physically painful for Doe, they stopped. By November some employees knew, while others simply questioned the relationship.

On December 4, 1999, store Director Jim Johnson began an investigation. He spoke separately to Doe and Repp. Both Doe and Repp denied the relationship. Johnson suspended Repp pending further investigation. After the investigation, Johnson concluded Repp and Doe had not been involved in a sexual relationship. Nevertheless, as a result of Repp's inappropriate behavior with Doe, on December 9, 1999, Albertson's suspended Repp for six days, demoted him to the position of checker, and transferred him to a different Albertson's store.

After his transfer, Repp continued to communicate with Doe. With Albertson's continuing the investigation, he instructed Doe to deny everything. On or about December 17, Repp asked Doe to meet him at the Albertson's where he worked. She did so, and the two then left Albertson's premises driving to Hillside Park where they engaged in sexual intercourse.

Doe's mother discovered information that lead her to believe Doe and Repp were having a romantic relationship. Doe's mother notified Albertson's on January 25, 2000. Two days later, Albertson's re-interviewed Repp. This time Repp admitted he and Doe were involved in a romantic relationship. Albertson's terminated Repp's employment.

Subsequently, Repp pleaded guilty to the crime of statutory rape in violation of I.C. § 18–6101(1) and was sentenced on October 19, 2000. Repp served one year in jail and one year on work release, and is serving ten years probation.

On May 11, 2001, Doe and her parents filed a complaint against Repp and Albertson's alleging negligence, intentional and negligent infliction of emotional distress, negligent hiring, negligent supervision, negligent retention, and negligent training. Albertson's denied responsibility, asserting several defenses including that the Idaho's Worker's Compensation Law precluded recovery.

Albertson's moved for summary judgment. The district court originally denied summary judgment. The court found Doe's alleged injury, a broken hymen, met the definition of injury provided by I.C. § 72–102(17)(c). Furthermore, the alleged injury qualified as an "accident" as the term is defined in I.C. § 72–102(17)(b). The district court also presumed the injury arose out of and in the course of employment. The district court then analyzed whether the exception provided in I.C. § 72–209(3) applied to circumvent the worker's compensation law. The district court determined that when viewing the facts in a light most favorable to Doe, there was enough evidence presented to deny summary judgment because there was an issue whether or not Albertson's impliedly authorized Repp's behavior.

Albertson's moved for reconsideration, presenting additional briefing to the district court on whether Albertson's impliedly authorized Repp's behavior. On reconsideration the district court analyzed the provisions of I.C. § 72–209(3) in accordance with agency law and principles. The district court then granted summary judgment in Albertson's favor, finding the exceptions contained in I.C. § 72–209 inapplicable and that the worker's compensation law precluded the suit against Albertson's.

Doe and her parents moved for reconsideration. The district court denied the motion, issued a Rule 54(b) certificate, and awarded $16,539.38 in costs to Albertson's. Doe and her parents timely appealed.

## STANDARD OF REVIEW

■ This Courts review of a district courts ruling on motion for summary judgment is the same as that required of the trial court when ruling on the motion. *Sun Val-*

*ley v. Rosholt, Robertson & Tucker,* 133 Idaho 1, 3, 981 P.2d 236, 238 (1999). On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Miller v. Simonson,* 140 Idaho 287, 289, 92 P.3d 537, 539 (2004). The law is well established in Idaho that on a motion for summary judgment the trial court must determine whether the pleadings, depositions, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Ada County v. Fuhrman,* 140 Idaho 230, 232, 91 P.3d 1134, 1136 (2004). We liberally construe the facts and draw all reasonable inferences from the record in favor of the nonmoving party. *Anderson v. Glenn,* 139 Idaho 799, 801, 87 P.3d 286, 288 (2003). Because our review is de novo, providing the summary judgment transcript that contained the parties' arguments is not necessary for appellate review.

## ANALYSIS

I. THE WORKER'S COMPENSATION LAW ABOLISHES ALL CAUSES OF ACTION AGAINST AN EMPLOYER FOR PHYSICAL INJURIES CAUSED BY AN ACCIDENT ARISING OUT OF AND IN THE COURSE OF EMPLOYMENT.

■ Appellants argue the district court erred in holding that the worker's compensation law barred the Appellants' complaint. Appellants contend this is in error because Doe's injuries were not compensable under worker's compensation and therefore the tort action may be maintained in district court against Albertson's. Albertson's disagrees and argues that the only remedy available to an employee is via the worker's compensation law. Albertson's asserts that the declaration of police power section and the exclusive remedy provision of the worker's compensation law specifically abolished all claims against the employer.

In 1917, our legislature enacted the state's first worker's compensation laws. 1917 Idaho Sess. Laws ch. 81; *Gifford v. Nottingham,* 68 Idaho 330, 340, 193 P.2d 831, 837 (1948)

(Holden, J., dissenting). Because the act was originally passed as an entire complete act it should be construed and considered as a whole. *Arneson v. Robinson,* 59 Idaho 223, 239, 82 P.2d 249, 255 (1938). Idaho recodified the worker's compensation law in 1971. 1971 Idaho Sess. Laws, ch. 122, p. 408; *Horton v. Garrett Freightlines, Inc.,* 115 Idaho 912, 916, 772 P.2d 119, 123 (1989).

The "Declaration of Police Power" section of the worker's compensation law was once known as the 1917 Idaho Sess. Laws ch. 81 § 1(b), later known as I.C. § 43–902, and today has been recodified as I.C. § 72–201. Today's version of the statute essentially reads as it did in 1917, except for the exclusion of three sentences [1] and the inclusion of occupational diseases. Idaho Code § 72–201 provides:

> The common law system governing the remedy of workmen against employers for injuries received and occupational diseases contracted in industrial and public work is inconsistent with modern industrial conditions. The welfare of the state depends upon its industries and even more upon the welfare of its wageworkers. The state of Idaho, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for injured workmen and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as is otherwise provided in this act, and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over

such causes are hereby abolished, except as is in this law provided.

Since its original enactment the worker's compensation law included an exclusiveness provision for an employee's remedy. In 1917 the section was known as the "Right to Compensation Exclusive." 1917 Idaho Sess. Laws ch. 81 § 6, p. 256.[2] This section was recodified in 1971 as I.C. § 72–211 and is now titled "Exclusiveness of Employee's Remedy." The section provides:

> Subject to the provisions of section 72–223, the rights and remedies herein granted to an employee on account of an injury or occupational disease for which he is entitled to compensation under this law shall exclude all other rights and remedies of the employee, his personal representatives, dependents or next of kin, at common law or otherwise, on account of such injury or disease.

I.C. § 72–211.

Within the first few years of enactment of the worker's compensation law we began expressing in our opinions that common law actions for workers injured in the course of employment were abolished. As early as 1923, we recognized that "[t]he Workmen's Compensation Law is purely statutory, and is an express departure and innovation so far as the common law is concerned, explicitly doing away with common law actions previously applicable to controversies within the scope of the statute." *Cook v. Massey,* 38 Idaho 264, 269–70, 220 P. 1088, 1090 (1923), *overruled in part by University of Utah Hosp. on Behalf of Harris v. Pence,* 104 Idaho 172, 657 P.2d 469 (1982). "[T]he legislature abolished every remedy for all injuries

---

1. In 1971 the following sentences were removed from the "Declaration of Police Power" section: The administration of the common law system in such cases has produced the result that little of the cost to the employer has reached the injured workman, and that little at large expense to the public. The remedy of the workman has been uncertain, slow and inadequate. Injuries in such employments formerly occasional, have become frequent and inevitable.

2. 1917 Idaho Sess. Laws ch. 81 § 6, p. 256 read as follows: The rights and remedies herein granted to an employee on account of a personal injury for

which he is entitled to compensation under this Act shall exclude all other rights and remedies of such employee, his personal representative, dependents, or next of kin, at common law or otherwise, on account of such injury.

Employers, who hire workmen within this State to work outside of the State, may agree with such workmen that the remedies under this Act shall be exclusive as regards injuries received outside this State by accident arising out of and in the course of such employment; and all contracts of hiring in this State shall be presumed to include such an agreement.

(negligent and non-negligent) received by a workman *'in course of his employment.'"* *Gifford,* 68 Idaho at 334, 193 P.2d at 833 (emphasis added). We recognized that the Act is a "special law providing compensation for injured employees, without reference to any question of negligence, either on the part of the employer or employee." *Id.* at 333, 193 P.2d at 832–33. Our early interpretation limited the abolishment of common law actions to instances where the employee's injury occurred during the course of employment.

In 1940 we began explicitly questioning what causes of actions were eliminated by the enactment of the worker's compensation law and whether a person may maintain an action in district court. In *Lebak v. Nelson,* 62 Idaho 96, 111, 107 P.2d 1054, 1060 (1940), we asked "[w]hat common law remedy only was thereby intended to be abolished?"

> The statute answers: "The remedy of workmen against *employers* for injuries received in industrial and public work" (italics ours). And why was the common law remedy of the worker for personal injuries against his *employer* abolished? Again the statute answers: Because "the remedy of the workman has been uncertain, slow and inadequate." The provisions of the statute are expressly confined to those occupying the relationship of employee and employer.

*Id.* In 1940, a personal injury caused by an accident arising out of and in the course of any employment covered by the act was compensated only by worker's compensation and not under any common law action. I.C. § 43–1001 (1931). We specified that an injury received in an industrial accident was the common law action abolished. The *Lebak* court, however, held that "the common law action of an *employee against a third person* to recover damages for *personal injuries* sustained by reason of actionable negligence of such third party *was not abolished* ...." *Id.* at 112, 107 P.2d at 1061. A year later in 1941, we stated "the legislature did not mean to take from a workman his common law remedy for a negligent act of his employer, resulting in serious injury and damage to him, and give him no other remedy in lieu

thereof." *Olson v. Union Pac. R. Co.,* 62 Idaho 423, 428, 112 P.2d 1005, 1007 (1941).

In looking at the intent behind I.C. §§ 72–201 and 72–211 we have said, "the legislature removed from the sphere of civil actions, all suits against an employer for damages on account of personal injury or death of an employee, where such injury or death rises out of and in the course of the employment...." *Gifford,* 68 Idaho at 334, 193 P.2d at 833. In 1969, this Court reaffirmed the holding in *Gifford,* recognizing that the "rule of law may in some cases deprive persons of remedy for damages which they had prior to the passage of the Workmen's Compensation Law...." *Stample v. Idaho Power Co.,* 92 Idaho 763, 766, 450 P.2d 610, 613 (1969).

Throughout the history of the worker's compensation law we have continued to rule that common law actions for personal injuries arising out of and in the course of employment were abolished. Until 1970, we were not asked, nor did we indicate, what causes of action might be maintained in the district court by an employee against his employer. Then in 1970, this Court heard an appeal from an employee who sued her employer in district court alleging that her cause of action was not covered by worker's compensation and therefore the action was properly brought in the district court. *Summers v. Western Idaho Potato Processing Co.,* 94 Idaho 1, 479 P.2d 292 (1970). This Court stated "actions based upon injuries otherwise remediable by common law action, which are not covered under the Idaho Workmen's Compensation scheme, are not abrogated by the Workmen's Compensation statutes." *Id.* at 2, 479 P.2d at 293. The employee Summers sued in district court for damages arising out of an industrial accident. *Id.* at 1, 479 P.2d at 292. Summers had already received worker's compensation benefits for her physical injuries. *Id.* This Court held Summers suffered an industrial accident when her clothes became entangled in a machine that left her standing nude in front of her fellow employees. *Id.* at 1–2, 94 Idaho 1, 479 P.2d 292–93. However, if Summers was not alleging any physical injury then she had to "establish a right of recovery at common law for purely emotional trauma, negligently

caused." *Id.* at 2, 479 P.2d at 293. On the other hand, if the emotional trauma was the result of a physical injury, then worker's compensation precluded her suit in district court. *Id.*

With *Summers* the issue was settled—causes of action not cognizable under worker's compensation may be brought in district court. Then in 1971, the legislature recodified the worker's compensation law. As stated above both the police power section and the exclusive remedy section remained part of the Act. Additionally, the legislature adopted a new provision, I.C. § 72–209, titled "Exclusiveness of liability of employer," which provides in part:

> (1) Subject to the provisions of section 72–223, [Idaho Code] the liability of the employer under this law shall be exclusive and in place of all other liability of the employer to the employee, his spouse, dependents, heirs, legal representatives or assigns.

Prior to 1971 there was no similar provision, although this provision appears to be the employer's mirror image of I.C. § 72–211. Both provisions state that if an employer is liable under the worker's compensation law then all other liability is excluded. Our prior caselaw interpreting the exclusiveness of worker's compensation is unaffected by the enactment of I.C. § 72–209.

> [W]hile section 72–209 of the Idaho Code provides that the liability of the employer under this law shall be exclusive and in place of all other liability of the employer to the employee, the exclusiveness of an injured employee's remedy is not absolute. *See* I.C. § 72–209(1). Circumstances may arise where an injured employee may seek redress in an Idaho forum other than the Industrial Commission where an alleged injury occurs in the course and scope of employment, but the injury is not compensable under the Worker's Compensation Act.

*Selkirk Seed Co. v. State Ins. Fund*, 135 Idaho 434, 439, 18 P.3d 956, 961 (2001). We have continued to hold that in Idaho the exclusive remedy for an employee against his employer for injuries arising out of and in the course of employment is the worker's compensation law. *Baker v. Sullivan*, 132 Idaho 746, 749, 979 P.2d 619, 622 (1999) (quoting *Yeend v. United Parcel Serv., Inc.*, 104 Idaho 333, 334, 659 P.2d 87, 88 (1982)). A tort action may be maintained against the employer if the injury is not compensable under worker's compensation. *Luttrell v. Clearwater County Sheriff's Office*, 140 Idaho 581, 585, n. 1, 97 P.3d 448, 452, n. 1 (2004); *Yeend v. United Parcel Serv., Inc.*, 104 Idaho 333, 334, 659 P.2d 87, 88 (1982). If we were to hold otherwise, employees would be precluded from suing their employers for employment contract disputes, wage disputes, wrongful termination, and other causes of action such as violations of the Idaho Human Rights Act.

Idaho Code §§ 72–201, 72–209 and 72–211 should not be read in isolation from one another. Each section is part of the worker's compensation law and we interpret them *in pari materia.* *See Robison v. Bateman–Hall Inc.*, 139 Idaho 207, 211, 76 P.3d 951, 955 (2003). When interpreting these three statutes we must conclude, as we have in the past, that if an injury is cognizable under the worker's compensation law then any common law remedy is barred, but if the injury is not cognizable under workman's compensation, then the employee is left to a remedy under the common law.

## II. A SEXUAL ASSAULT INHERENTLY PERSONAL OR PRIVATE IN ORIGIN AND WITHOUT PHYSICAL INJURY IS NOT COVERED BY WORKER'S COMPENSATION.

Albertson's, as the moving party, must show there is no genuine issue as to any material fact that Doe would have been covered by worker's compensation and that it is therefore entitled to judgment as a matter of law. Eligibility under worker's compensation requires a showing that the injury was caused by an accident arising out of and in the course of employment. *Dinius v. Loving Care and More, Inc.*, 133 Idaho 572, 574, 990 P.2d 738, 740 (1999). Therefore, Albertsons must demonstrate Doe suffered an injury covered by workers compensation.

Doe and her parents argue that Doe did not suffer an injury as defined by the workers compensation law. They contend Doe did not suffer "violence to the physical structure of the body." They assert Does injuries are psychological and therefore, not compensable under workers compensation. The district court concluded Doe suffered an injury, a broken hymen, caused by an accident.

Idaho Code § 72–102(17)(a) defines injury as "a personal injury caused by an accident arising out of and in the course of any employment covered by the workers compensation law." Injury is "construed to include only an injury caused by an accident, which results in violence to the physical structure of the body." I.C. § 72–102(17)(c).

Even if we were to assume Does alleged broken hymen constitutes a physical injury, we find it difficult to classify Repps and Does actions as an accident. Her ruptured hymen was not "an unexpected, undesigned, and unlooked for mishap, or untoward event." It was something that typically occurs when a virgin engages in sexual intercourse. Although a seventeen-year-old such as Jane Doe is incapable, under the laws, of giving consent to sexual intercourse, *Fulgham v. Gatfield*, 72 Idaho 367, 241 P.2d 824 (1952), such inability to legally consent to the act does not mean that either the act of sexual intercourse or the physical consequences of such sexual intercourse (a ruptured hymen) were "an unexpected, undesigned, and unlooked for mishap, or untoward event." Since there was no accident as defined by I.C. § 72–102(17)(b), Jane Doe did not suffer a personal injury as defined by I.C. § 72–102(17)(c), and her claims are not pre-empted by the Workers Compensation Law. The district court erred in determining that Doe's injuries were compensable under worker's compensation, thereby barring her claim in district court.

## III. THE DISTRICT COURT'S AWARD OF COSTS TO ALBERTSON'S IS REVERSED.

Upon granting summary judgment in Albertson's favor, the district court awarded Albertson's $16,539.38 in costs. Since we reverse the district court's order on summary judgment and remand the matter for further proceedings, we also reverse the award and judgment for costs.

## IV. ATTORNEY FEES ON APPEAL.

Both parties request attorney fees on appeal. To award attorney fees on appeal, a party must assert the specific statute or common law rule on which the award is based. *Browning v. Browning*, 136 Idaho 691, 696, 39 P.3d 631, 636 (2001).

Albertson's requests attorney fees pursuant to I.C. § 12–121. However, that statute requires that Albertson's be the prevailing party, and since they do not prevail on appeal they are not awarded attorney fees.

Doe and her parents mistakenly request attorney fees on appeal pursuant to Idaho Appellate Rule 41 and I.C. § 12–101. First of all, Idaho Code § 12–101 authorizes an award for costs not attorney fees. Moreover, in Idaho, pro se litigants are not entitled to attorney fees. *O'Neil v. Schuckardt*, 112 Idaho 472, 480, 733 P.2d 693, 701 (1986). Therefore, no attorney fees are awarded.

## CONCLUSION

The "exclusive remedy" provision of the worker's compensation law is not a bar to Doe's and her parents' claims against Albertson's. The district court's order granting summary judgment is reversed. The district court's award of costs is reversed. Costs to Doe and her parents on appeal.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and JONES concur.