# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45542

BALTAZAR GOMEZ, JR., ESTELLA
GRIMALDO, ELENA GOMEZ,
ELIZABETH FREEMAN, VERONICA
FERRO, ZANDRA PEDROZA, ALICIA
GOMEZ, YESENIA GOMEZ, and
BALTAZAR GOMEZ, III,

      Plaintiffs-Appellants,

v.

CROOKHAM COMPANY, an Idaho
corporation,

      Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, September 2018 Term

Opinion filed: December 19, 2018

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County, Hon. Thomas J. Ryan, District Judge.

The judgment of the district court is <u>affirmed</u>.

Skaug Law, PC, Nampa and Dinius & Associates, PLLC, Nampa, for Appellants. Nathan T. Gamel argued.

Elam & Burke, PA, Boise, for Respondent. James A. Ford argued.

---

HORTON, Justice.

The family of Mrs. Francisca Gomez (the Gomezes) appeals a decision of the district court granting Crookham Company's (Crookham) motion for summary judgment on all claims relating to Mrs. Gomez's death. The district court held that Mrs. Gomez was working in the scope of her employment at the time of the accident, that all of the Gomezes' claims are barred by the exclusive remedy rule of Idaho worker's compensation law, that the exception to the exclusive remedy rule provided by Idaho Code section 72-209(3) does not apply, and that the Gomezes' product liability claims fail as a matter of law because Crookham is not a "manufacturer." We affirm.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

1

This case arises from the horrific death of Mrs. Gomez during a shift at Crookham on January 20, 2016. Crookham is a wholesale seed distributor located in Caldwell, Idaho. Mrs. Gomez was an employee of Crookham for more than thirty years before her death.

In early 2015, Crookham decided that a new picking table was necessary to sort seeds more efficiently. A Crookham employee fabricated the new table and it was installed in the company's "Scancore" room in late 2015. Although OSHA had previously cited Crookham for violating machine guard safety standards and lockout-tagout protocol with its former picking tables, the new picking table's drive shaft was not fully guarded and Crookham did not perform the required lockout-tagout procedures while employees cleaned the table.[1]

On January 20, 2016, Mrs. Gomez was assigned to work in the Scancore room. The employees' duties in that room included cleaning the picking table between batches of different varieties of seeds. To clean the picking table, employees use an air wand to blow seeds upward from beneath the table. During her shift, Mrs. Gomez was under the picking table attempting to clean it when the table's exposed drive shaft caught her hair and pulled her into the machine. She died as a result of her injuries. OSHA subsequently investigated Crookham and issued "serious" violations to the company because it exposed its employees to the unguarded drive shaft without implementing lockout-tagout procedures.

In July 2016, the Gomezes filed their Complaint and Demand for Jury Trial. The complaint set forth nine causes of action: (1) negligent design; (2) failure to warn; (3) strict liability–defective product; (4) strict liability–failure to warn; (5) breach of implied warranty of fitness and/or merchantability; (6) breach of express warranty; (7) strict liability–abnormally dangerous activity; (8) negligence/negligence per se; and (9) wrongful death.

Crookham moved for summary judgment. The district court issued a memorandum decision explaining its grant of summary judgment to Crookham. The district court held all of the Gomezes' claims were barred by the exclusive remedy rule of worker's compensation law, that the unprovoked physical aggression exception to the exclusive remedy rule did not apply, that Mrs. Gomez was working in the scope of her employment when the accident occurred, and that the Gomezes' product liability claims failed because Crookham was not a manufacturer of

---

[1] Lockout is the use of a device, such as a lock, on a machine to ensure that the machine cannot be operated until the lockout device is removed. OSHA, 29 C.F.R. § 1910.147(b) (2018). Tagout is the placement of a prominent warning, such as a tag, on the machine to signal that the machine may not be operated until the tag is removed. *Id.* OSHA requires lockout-tagout procedures specifically to prevent injury to employees while repairing or cleaning machinery. *Id.* § 1910.147(a)(1)(i).

the picking table for product liability purposes. The district court entered a final judgment dismissing all of the Gomezes' claims on October 3, 2017. The Gomezes timely appealed.

## II. STANDARD OF REVIEW

"This Court's review of a trial court's ruling on a motion for summary judgment is the same standard used by the trial court in originally ruling on the motion." *Robison v. Bateman-Hall, Inc.*, 139 Idaho 207, 209, 76 P.3d 951, 953 (2003). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Taylor v. Taylor*, 163 Idaho 910, 916, 422 P.3d 1116, 1122 (2018) (citing I.R.C.P. 56(a)). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Marek v. Hecla, Ltd.*, 161 Idaho 211, 220, 384 P.3d 975, 984 (2016); *see also Houpt v. Wells Fargo Bank, Nat. Ass'n*, 160 Idaho 181, 186, 370 P.3d 384, 389 (2016) ("If reasonable people could reach different conclusions or inferences from the evidence, summary judgment is inappropriate."). "This Court liberally construes the record in favor of the party opposing the motion for summary judgment and draws any reasonable inferences and conclusions in that party's favor." *Robison*, 139 Idaho at 209, 76 P.3d at 953.

> The interpretation of a statute is a question of law over which this Court exercises *de novo* review. The objective of statutory interpretation is to derive legislative intent. Legislative intent begins with the literal language of the statute. To determine the meaning of a statute, the Court applies the plain and ordinary meaning of the terms and, where possible, every word, clause and sentence should be given effect.

*Id.* at 210, 76 P.3d at 954 (internal citations omitted). "Statutes which relate to the same subject are *in pari materia* and they should be construed together to effectuate legislative intent." *Dewey v. Merrill*, 124 Idaho 201, 204, 858 P.2d 740, 743 (1993).

## III. ANALYSIS

The Gomezes contend that the exclusive remedy rule of Idaho worker's compensation law is found in Idaho Code section 72-211 alone, that the exclusive remedy rule does not bar civil death claims, and that the Industrial Commission does not have exclusive jurisdiction over civil death claims. They alternatively argue that the exception to the exclusive remedy rule found in Idaho Code section 72-209(3) permits them to proceed with their claims because Crookham committed an unprovoked physical aggression against Mrs. Gomez. They further argue that Mrs.

3

Gomez's death does not meet the definition of "accident" and that Crookham is a manufacturer of the picking table at issue for product liability purposes.

**A. The exclusive remedy rule bars the Gomezes' civil death claim, unless the exception to the exclusive remedy rule applies.**

The Gomezes argue that Idaho Code section 72-211 alone provides the exclusive remedy rule in Idaho, that the exclusive remedy rule does not bar civil death claims, and that the Industrial Commission does not have exclusive jurisdiction over work-related death claims.

1. Idaho Code sections 72-209 and 72-211 comprise the exclusive remedy rule.

The Gomezes argue that Idaho Code section 72-211 alone provides the exclusive remedy rule in Idaho. We find that Idaho Code sections 72-209(1) and 72-211 together comprise the exclusive remedy rule of Idaho worker's compensation law.

Each section of the worker's compensation law is interpreted "*in pari materia*." *Roe v. Albertson's Inc.*, 141 Idaho 524, 530, 112 P.3d 812, 818 (2005). Therefore, the statutes should be "taken together and construed as one system, and the object is to carry into effect the intention." *Grand Canyon Dories v. Idaho State Tax Comm'n*, 124 Idaho 1, 4, 855 P.2d 462, 465 (1993) (quoting *Meyers v. City of Idaho Falls*, 52 Idaho 81, 89–90, 11 P.2d 626, 629 (1932)). "For the purpose of learning the intention, all statutes relating to the same subject are to be compared, and . . . brought into harmony by interpretation." *Id.*

Idaho Code section 72-209 was added to the worker's compensation law in 1971 when the laws were recodified under Title 72. *Roe*, 141 Idaho at 530, 112 P.3d at 818. "[B]oth the police power section and the exclusive remedy section remained part of the Act." *Id.* (referring to what are now Idaho Code sections 72-201 and 72-211). Regarding Idaho Code section 72-209, we have explained: "Prior to 1971 there was no similar provision, although this provision appears to be the employer's mirror image of I.C. § 72-211" *Id.*

Idaho Code section 72-211 provides that "the rights and remedies herein granted to an employee on account of an injury or occupational disease for which he is entitled to compensation under this law shall exclude all other rights and remedies . . . ." Idaho Code section 72-209(1) states that "the liability of the employer under this law shall be exclusive and in place of all other liability of the employer to the employee . . . ." In sum, Idaho Code section 72-211 specifies that worker's compensation benefits are an employee's exclusive remedy where the employee is entitled to such benefits, and Idaho Code section 72-209(1) reinforces this remedy by requiring an employer to provide benefits even where another party is also liable to

the employee. Idaho Code section 72-209(1) also limits the employer's liability for claims covered under the law to worker's compensation benefits. When read *in pari materia*, it is clear that these statutes were intended to operate in harmony—"[b]oth provisions state that if an employer is liable under the worker's compensation law then all other liability is excluded." *Roe*, 141 Idaho at 530, 112 P.3d at 818. Thus, we reaffirm our statement in *Venters v. Sorrento Delaware, Inc.*, 141 Idaho 245, 248–49, 108 P.3d 392, 395–96 (2005): "Counterbalancing the employers' burden of providing 'sure and certain relief' to injured workers, the Act limits the employers' exposure to tort liability through I.C. §§ 72-209(1) and 72-211. These limitations on the scope of employee remedies are together referred to as the 'exclusive remedy rule.'"

2. The exclusive remedy rule bars civil death claims and the Industrial Commission has exclusive jurisdiction over such claims unless the exception provided by Idaho Code section 72-209(3) applies.

The Gomezes argue that the exclusive remedy rule does not bar civil claims for a work-related death and that the Industrial Commission does not have exclusive jurisdiction over work-related death claims. Because these two concepts are inextricably connected, the Gomezes' arguments are essentially the same. The result the Gomezes seek is a determination that they have a remedy in civil court for Mrs. Gomez's death, without reliance on an exception to the exclusive remedy rule.

As previously stated, Idaho Code sections 72-209(1) and 72-211 comprise the exclusive remedy rule. *Venters*, 141 Idaho at 248–49, 108 P.3d at 395–96. Idaho Code section 72-209(1) unambiguously limits an employer's liability for a work-related injury, occupational disease, or death to worker's compensation benefits. Yet, the Gomezes posit that the exclusive remedy rule does not include work-related death claims because Idaho Code section 72-211 does not expressly include such claims. While the statute does not explicitly include death claims, it is subject to Idaho Code section 72-223, which does expressly include death claims.

Idaho Code section 72-223 provides that an employer is liable to pay worker's compensation for a work-related injury, occupational disease, or death, even though a third party is also liable to pay damages. The statute also provides that an employee may have a remedy outside of the worker's compensation law against the third party; however, employers are not considered third parties. I.C. § 72-223; *Robison v. Bateman-Hall, Inc.*, 139 Idaho 207, 211, 76 P.3d 951, 955 (2003) ("[P]arties deemed employers for the purpose of being liable for worker's compensation benefits under I.C. § 72-102 are the same parties deemed immune from third-party

5

tort liability under I.C. § 72-223"). Consequently, we hold that Idaho Code section 72-211 limits an employee's remedy against an employer for a work-related death to worker's compensation benefits.

> And lest it be argued that this rule of law may in some cases deprive persons of remedy for damages which they had prior to the passage of the Workmen's Compensation Law, we note that that law has a dual policy . . . to provide "not only for employees a remedy which is both expeditious and independent of proof of fault, but also for employers a liability which is limited and determinative."

*Stample v. Idaho Power Co.*, 92 Idaho 763, 766, 450 P.2d 610, 613 (1969) (quoting *Smither & Co. v. Coles*, 242 F.2d 220, 222 (D.C. Cir. 1957)).

As to the Industrial Commission's jurisdiction, the Gomezes assert that the plain meaning of Idaho Code section 72-201 indicates legislative intent to exclude death claims from the Industrial Commission's exclusive jurisdiction because the word "death" is not expressly included in the statute. The Gomezes assert instead that the Industrial Commission has concurrent jurisdiction over industrial death claims, which allows the Gomezes to both collect death benefits and to also bring a civil action arising from Mrs. Gomez's death.

The Gomezes' contention fails when Idaho Code section 72-201 is read in conjunction with Idaho Code sections 72-209 and 72-211, as intended: "Idaho Code §§ 72-201, 72-209 and 72-211 should not be read in isolation from one another." *Roe v. Albertson's Inc.*, 141 Idaho 524, 530, 112 P.3d 812, 818 (2005). "Each section is part of the worker's compensation law and we interpret them *in pari materia*." *Id.* Idaho Code section 72-201 states, in part: "The common law system governing the remedy of workmen against employers for injuries received and occupational diseases contracted in industrial and public work is inconsistent with modern industrial conditions." The statute also provides that "all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished . . . ." I.C. § 72-201. As already discussed, Idaho Code sections 72-209(1) and 72-211 comprise the exclusive remedy rule and include death claims.

Thus, when Idaho Code sections 72-201, 72-209, and 72-211 are read together, it is evident that the Legislature intended that the Industrial Commission would have exclusive jurisdiction over death claims arising out of and in the course of employment. As we have previously noted, "[i]f a worker is entitled to benefits, the operation of the exclusive remedy rule generally grants the Industrial Commission exclusive jurisdiction over the matter." *Dominguez ex rel. Hamp v. Evergreen Res., Inc.*, 142 Idaho 7, 12, 121 P.3d 938, 943 (2005); *see also*

6

*Stample*, 92 Idaho at 766, 450 P.2d at 613 (holding that courts do not have jurisdiction over a death claim when the claim is covered under worker's compensation law); *accord*, *Meisner v. Potlatch Corp.*, 131 Idaho 258, 261, 954 P.2d 676, 679 (1998). We say "generally" because the exclusive remedy rule is not absolute. *Dominguez ex rel. Hamp*, 142 Idaho at 11, 121 P.3d at 942. When an exception applies, the Industrial Commission has concurrent jurisdiction with the courts over the claim. *Id.* Thus, because the Gomezes were entitled to (and indeed did receive) worker's compensation benefits for Mrs. Gomez's death, the Industrial Commission had exclusive jurisdiction over their claim, unless an exception to the exclusive remedy rule applies. We thus turn our attention to the Gomezes' claim that the exception provided by Idaho Code section 72-209(3) applies to their claim.

**B. The district court correctly determined that Crookham's conduct did not constitute a "wilful or unprovoked [act of] physical aggression."**

The exception to the exclusive remedy rule created by Idaho Code section 72-209(3) permits an employee to pursue a civil action against an employer in cases of "wilful or unprovoked physical aggression" against the employee. I.C. § 72-209(3). The employee bears the burden of showing that the exception applies. *Marek v. Hecla, Ltd.*, 161 Idaho 211, 215, 384 P.3d 975, 979 (2016). Where the exception applies, the employee is "permitted to collect worker's compensation benefits for which he is eligible *and* to bring a cause of action against his employer outside the worker's compensation system." *Dominguez ex rel. Hamp*, 142 Idaho at 12, 121 P.3d at 943 (emphasis in original). In such cases, the damage award is reduced by the amount payable through worker's compensation to prevent a double recovery. *Id.* At issue here is whether Crookham's conduct amounts to an act of unprovoked physical aggression against Mrs. Gomez.

Our prior decisions regarding the exception have focused on the Legislature's use of the phrase "physical aggression." *See Barrett v. Hecla Mining Co.*, 161 Idaho 205, 208–09, 384 P.3d 969, 972–73 (2016), *Marek*, 161 Idaho at 218, 384 P.3d at 982; *DeMoss v. City of Coeur d'Alene*, 118 Idaho 176, 179, 795 P.2d 875, 878 (1990); *Kearney v. Denker*, 114 Idaho 755, 757, 760 P.2d 1171, 1173 (1988). In *Kearney*, we determined that "[t]o prove aggression there must be evidence of some offensive action or hostile attack. It is not sufficient to prove that the alleged aggressor committed negligent acts that made it substantially certain that injury would occur." *Kearney*, 114 Idaho at 757, 760 P.2d at 1173. We expanded on this statement in *Marek*, stating

that "negligence—no matter how gross—is insufficient to trigger the exclusivity exception under section 72-209(3)." 161 Idaho at 220, 384 P.3d at 984.

The facts of the present case are strikingly similar to those presented in *Kearney*. There, the injured employee was operating a commercial lawnmower with an exposed blade and lacking any mechanism to protect the operator in the event that the operator slipped. 114 Idaho at 756, 760 P.2d at 1172 (1988). The employer further knew that its employees would use the lawnmower on hillsides with wet grass. *Id*. Almost predictably, the employee slipped while going downhill with the mower and her foot came in contact with moving blade, resulting in her injury. *Id*. The employee sued, and the district court granted summary judgment to the employer. We affirmed, holding:

> The word "aggression" connotes "an offensive action" such as an "overt hostile attack." *Webster's Third New International Dictionary* 41 (1969). To prove aggression there must be evidence of some offensive action or hostile attack. It is not sufficient to prove that the alleged aggressor committed negligent acts that made it substantially certain that injury would occur.
>
> There was no evidence presented to the trial court in this case that the employer wilfully or without provocation physically and offensively or hostilely attacked the employee. In the absence of this evidence there was no genuine issue of material fact, and the trial court was justified in granting summary judgment against the employee.

*Id*. at 757–58, 760 P.2d at 1173–74. The instant appeal is analytically indistinguishable from the issue addressed in *Kearney* and the same result obtains.

## C. We will not address the Gomezes' contention that death does not fall under the definition of "accident" in Idaho Code section 72-102(18)(b).

The Gomezes assert that their argument to the district court that Mrs. Gomez's injury did not occur during the course and scope of her employment required an analysis of the definition of "accident" provided by Idaho Code section 72-102(18)(b). In this appeal, the Gomezes argue that "accident" does not include injuries that result in death. The district court rejected the Gomezes' argument because "plaintiffs admit that Mrs. Gomez was killed in the course and scope of her employment" in their complaint, and "[t]he Idaho Industrial Commission has paid out workers compensation benefits" to Mrs. Gomez's spouse and dependent son. Because the Gomezes admitted in their complaint that Mrs. Gomez was killed during the course and scope of her employment, we will not address this issue on appeal.

## D. Crookham is not a manufacturer of the picking table under the Idaho Product Liability Reform Act.

The Gomezes argue that Crookham is a manufacturer of the picking table for product liability purposes because the table is a component part of the seeds that Crookham produces under Idaho Code section 6-1402(3).

Under Idaho Code section 6-1402, a "product seller" is defined as "any person or entity that is engaged in the business of selling products, whether the sale is for resale, or for use or consumption." I.C. § 6-1402(1). A "manufacturer" is a "product seller who designs, produces, makes, fabricates, constructs, or remanufactures the relevant product or component part of a product before its sale to a user or consumer." I.C. § 6-1402(2). A "product" is "any object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts, and produced for introduction into trade or commerce." I.C. § 6-1402(3). Idaho Code section 6-1402 does not define component parts, but the Restatement (Third) of Torts provides that "[p]roduct components include raw materials, bulk products, and other constituent products sold for integration into other products." RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 5 (1998).

The Gomezes' argument fails because the picking table at issue is neither a product nor a component part of a product. The picking table was not produced for introduction into trade or commerce, nor was it sold for integration into other products. Because the picking table was neither a product nor a component part, Crookham is not a "manufacturer" of the picking table at issue under the Idaho Product Liability Reform Act.

**E. The Gomezes are not entitled to attorney fees on appeal.**

The Gomezes request attorney fees pursuant to Idaho Code sections 12-120 and 12-121. As the Gomezes have not prevailed in this appeal, they are not entitled to recover attorney fees.[2]

## IV.    CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court. Costs on appeal to Crookham.

Chief Justice BURDICK, and Justices BRODY, BEVAN and STEGNER **CONCUR.**

---

[2] We note that even if the Gomezes had prevailed in this appeal, their request for an award of attorney fees under Idaho Code section 12-120 would have failed, as they did not cite the specific subsection of the statute upon which they rely. "It is oft repeated by this Court that, '[i]f the party is claiming that a statute provides authority for an award of attorney fees, the party must cite to the statute and, if applicable, the specific subsection of the statute upon which the party relies.' " *Stephen v. Sallaz & Gatewood, Chtd.*, 150 Idaho 521, 529, 248 P.3d 1256, 1264 (2011) (quoting *Bream v. Benscoter*, 139 Idaho 364, 369, 79 P.3d 723, 728 (2003)).

9